**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stacy Ratajski, ) | No. CV-11-8119-PCT-FJM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| Michael J. Astrue, Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

The court has before it plaintiff's opening brief (doc. 12), defendant's response (doc. 15), and plaintiff's reply (doc. 16).

This case arises from the denial by the Social Security Administration of plaintiff's applications for disability insurance benefits and supplemental security income filed on May 30, 2007, alleging a disability onset of January 26, 2007. The claims were denied initially and upon reconsideration. After a hearing on February 9, 2010, the administrative law judge (ALJ) issued a decision denying benefits. The decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. Plaintiff then filed this action for judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

A district court may set aside a denial of benefits "only if it is not supported by substantial evidence or if it is based on legal error." Thomas v. Barnhart, 278 F.3d 947, 954

(9th Cir. 2002). Substantial evidence is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Id. (citation omitted).

**I.**

Plaintiff was 30 years old on her alleged disability onset date. She graduated from high school, attended two years of college, and worked in the past as a cashier, caregiver, and hostess. In December 2006, she stopped working because she was going to have a baby. On January 26, 2007, one week after her son's birth, plaintiff suffered an acute myocardial infarction and congestive heart failure. She contends that the damage to her heart muscle left her with ventricular dysfunction, which causes extreme fatigue and shortness of breath, that in turn prevents her from engaging in gainful employment.

On January 29, 2007, three days after her myocardial infarction, a CT of the thorax was negative for pulmonary embolism or aortic dissection. A right heart catheterization, with myocardial biopsy showed no evidence of myocarditis. On February 22, 2007, an echocardiogram showed normal wall motion with ejection fraction[1] estimated at 50%, mild mitral regurgitation, and mild tricuspid regurgitation. In March 2007, plaintiff received follow-up care from Robert Scott, M.D., and Jerome C. Robinson, M.D. Tr. 258, 325-28. Plaintiff told Dr. Scott that she was "doing fairly well," including caring for her newborn and herself independently and performing "most" of her daily activities. Tr. 258. Drs. Scott and Robinson noted that her ejection fraction was 44%. In April 2007, plaintiff told Dr. Robinson that she was "feeling well in all regards," and was "taking care of her three children and household chores without difficulty." Tr. 323. The cardiovascular examination was normal, including no edema or jugular venous distention. Tr. 323. In May 2007, plaintiff's cardiovascular examination was again normal. Tr. 287. Her ejection fraction was

---

[1] An ejection fraction represents the percentage of blood in the ventricle that is pumped out with each heart contraction.

- 2 -

1  "slightly lower" at 37%, which Dr. Robinson interpreted as a moderate to severe reduction.
2  Tr. 287, 291. Dr. Robinson noted that plaintiff was "getting along well," taking care of her
3  three young children, and had no angina (chest pain) or dyspnea (shortness of breath). Dr.
4  Robinson concluded that plaintiff's condition was "stable." Tr. 287.

5        In August 2007, plaintiff's ejection fraction was 53%, but Dr. Robinson opined that
6  it may be overestimated when compared to her prior results. Tr. 317, 319. In September
7  2007, plaintiff told Dr. Robinson that she was "getting along well," with no chest pain or
8  other heart-related symptoms, although she noted "easy fatiguability." Tr. 317, 319. Dr.
9  Robinson concluded that plaintiff's heart condition was "stable," noting that her heart attack
10 was likely the result of a thrombus (blood clot) that had resolved. Tr. 317, 319. Dr.
11 Robinson also reported that plaintiff was "totally disabled from work because of the large
12 size of her myocardial infarction and her application for social security disability will be
13 supported fully." Tr. 318.

14       In December, 2007, John Prieve, D.O., performed a consultative examination. Tr.
15 367-70. Plaintiff told Dr. Prieve that she had fatigue and shortness of breath two to five
16 times a week, but she could walk for a mile, stand for an hour, sit all day, perform household
17 chores, and take care of her personal needs. Examination findings were normal in most
18 areas, and Dr. Prieve observed no shortness of breath. Tr. 368-69. He concluded that
19 plaintiff's fatigue was likely due to muscle deconditioning, with her congestive heart failure
20 a contributing factor. Tr. 369. Dr. Prieve opined that plaintiff could meet the physical
21 demands of light work. Tr. 370.

22       In January 2008, Ernest Griffith, M.D., a State agency physician, reviewed the record
23 and also determined that plaintiff could meet the physical demands of light work. Tr. 372-
24 79.

25       In February 2008, plaintiff complained to Dr. Robinson of "significant" fatigue. Tr.
26 398. Dr. Robinson noted that her condition was "clinically stable," Tr. 398, and that her tests
27 showed "progressive improvement" overall. Tr. 392. That same month, Dr. Robinson
28 completed a form related to plaintiff's ability to perform work-related functions. Tr. 444-46.

1    He opined that plaintiff had extreme functional limitations and "severe" fatigue as a result
2    of her heart attack and significant reduction in pumping function of her heart. He concluded
3    that she is "considered totally disabled from gainful employment now and for the future."
4    Tr. 446.

5          In July 2008, Dr. Robinson noted that plaintiff was "getting along well," and
6    concluded that she was making a "satisfactory" recovery. Tr. 424. He nevertheless again
7    opined that plaintiff was "totally disabled" from any type of gainful employment due to her
8    "left ventricular dysfunction." Tr. 425.

9          In February 2009 and June 2009, plaintiff returned to Dr. Robinson for follow-up care.
10   Tr. 416-17, 420-21. Dr. Robinson noted that she was "doing well" and "really getting along
11   very nicely," without cardiopulmonary complaints. Tr. 416, 420. Diagnostic tests showed
12   that plaintiff's ejection fraction was between 45% and 50%, which was "slightly lower than
13   normal." Tr. 420. Dr. Robinson concluded that plaintiff was "clinically doing quite nicely,"
14   with "progressive improvement" in her ejection fraction. An echocardiogram on February
15   25, 2009 showed that plaintiff had "some enlargement of the left ventricle" "with a moderate
16   degree of reduction of the systolic function but preserved diastolic function." Tr. 419. Dr.
17   Robinson noted that when compared to the study of February 13, 2008, "left ventricular
18   diastolic function now appears to be normal." Tr. 419.

19         In April 2009, Dr. Robinson completed another disability form, and continued to
20   opine that plaintiff has extreme functional limitations. Tr. 447-49. He now opined that she
21   could sit for 8 hours during a workday, Tr. 447, but that she could not perform even
22   sedentary work because the mental stress would aggravate her condition. Tr. 449.

23         The ALJ concluded that the medical evidence does not support disabling limitations.
24   Tr. 16. Rather, according to the ALJ, the evidence indicates progressive improvement of her
25   cardiac condition. The ALJ found that plaintiff had severe impairments but her condition did
26   not meet or equal the requirements of any of the listings, including Listing 4.02 concerning
27   the cardiovascular system. See 20 C.F.R., part 404, subpt. P, app. 1 § 4.00. The ALJ held
28   that plaintiff retained the residual functional capacity to perform a full range of unskilled

1  work at the sedentary exertional level, although she cannot perform her past relevant work.
2  Referring to the Medical-Vocational Guidelines, and given plaintiff's age, education, work
3  experience, and residual functional capacity, the ALJ concluded that plaintiff is "not
4  disabled" pursuant to Rule 201.28 of the Medical-Vocational Guidelines. See 20 C.F.R. pt.
5  404, subpt. P, app. 2, Rule 201.28.

## II.

Plaintiff raises two challenges to the ALJ's decision. She first contends that the ALJ erred in concluding that plaintiff's heart condition does not meet Listing 4.02 for chronic heart failure. The listings at 20 C.F.R. pt. 404, subpt. P, app.1 cover medical conditions that are so debilitating that they warrant an automatic finding of disability without further consideration of the claimant's residual functional capacity to perform past or other work. Sullivan v. Zebley, 493 U.S. 521, 534, 110 S. Ct. 885, 893 (1990). The claimant bears the burden of establishing that she meets a listing for a period of 12 continuous months, by showing that she meets "*all* the specified medical criteria" for the listing. Id. at 530, 110 S. Ct. at 891 (emphasis in original); 20 C.F.R. § 404.1509.

In order to meet the introductory requirements of Listing 4.02, plaintiff must show evidence of chronic heart failure "while on a regimen of prescribed treatment," with "symptoms and signs described in 4.00D2." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 4.02. Section 4.00D2(b)(i) provides that symptoms of chronic heart failure include easy fatigue, weakness, shortness of breath (dyspnea), cough, or chest discomfort at rest or with activity.

Plaintiff regularly denied having ongoing cardiac-related symptoms. See, e.g., Tr. 287 (no angina or dyspnea); Tr. 317, 319 (no angina or other symptoms); Tr. 416, 420 (no overt cardiopulmonary symptoms); Tr. 422 (no significant dyspnea, no angina, and occasional palpitations). Moreover, plaintiff's cardiologist routinely noted normal cardiovascular examination findings, such as no edema or jugular venous abnormalities. See, e.g., Tr. 258, 287, 319, 323, 398, 416, 424. Therefore, plaintiff has not satisfied the introductory requirements of Listing 4.02.

In addition, plaintiff must show that her impairments satisfy one set of criteria from

- 5 -

1    subsection 4.02A and one set of criteria from subsection 4.02B. The Commissioner argues
2    that even if we assume that plaintiff satisfied subsection 4.02A, she nevertheless does not
3    meet the criteria for Listing 4.02 because she fails to satisfy 4.02B(3).[2]

4    Section 4.02B(3) requires a showing of plaintiff's "[i]nability to perform on an
5    exercise tolerance test at a workload equivalent to 5 METs or less" due to "[d]yspnea,
6    fatigue, palpitations, or chest discomfort." Plaintiff does not refer to any evidence that she
7    could not perform such a test. Therefore, she has not met the criteria of subsection 4.02B and
8    accordingly fails to satisfy all of the requirements of Listing 4.02. The ALJ did not err in
9    concluding that plaintiff's impairment does not meet Listing 4.02 for chronic heart failure.

### III.

11   Plaintiff next contends that the ALJ failed to comply with 20 C.F.R. § 404.1527 by
12   failing to accord proper weight to plaintiff's treating cardiologist, Dr. Jerome Robinson.
13   "Although a treating physician's opinion is generally afforded the greatest weight in
14   disability cases, it is not binding on an ALJ with respect to the existence of an impairment
15   or the ultimate determination of disability." Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th
16   Cir. 2005).

17   The ALJ discounted Dr. Robinson's conclusions that plaintiff was totally disabled
18   from work, finding that his opinions are inconsistent with the overall medical evidence,
19   which indicates progressive improvement in her heart condition, her ejection fractions and
20   left ventricular function. Tr. 18. The ALJ further explained that Dr. Robinson's opinions
21   are contradicted by consultative physicians Dr. Prieve and Dr. Ernest Griffith's[3] opinions that
22   plaintiff can perform light work. Tr. 19.

23   Moreover, Dr. Robinson's conclusion that plaintiff is totally disabled was based in

---

[2] The parties agree that only 4.02B(3) is at issue in this case.

[3] The ALJ erroneously refers to Dr. Ernest Griffith as "Jerome C. Robinson. M.D., a State Agency *psychological* consultant." Tr. 19 (emphasis added). This error had no adverse impact on the ALJ's conclusions given the ALJ's proper construction of Dr. Griffith's findings. See Shinseki v. Sanders, 556 U.S. 396, 407, 129 S. Ct. 1696, 1705 (2009).

large part on plaintiff's complaints of disabling fatigue. The ALJ found, however, that plaintiff's complaints were not credible. The ALJ noted that plaintiff testified that she cares for her children, grocery shops, goes to the laundromat, cooks and socializes. The ALJ correctly found that these activities of daily living are inconsistent with plaintiff's claim of disabling limitations. Tr. 18. Plaintiff has not challenged this conclusion.

Even when considering that more weight is generally given to a specialist's opinion, see 20 C.F.R. § 404.1527(c)(5), we conclude that the ALJ properly discounted Dr. Robinson's opinion.

**IV.**

Based on the foregoing, we conclude that the ALJ's decision that plaintiff is not disabled is supported by substantial evidence in the record. Therefore, **IT IS ORDERED AFFIRMING** the decision of the Commissioner denying disability benefits. The clerk shall enter final judgment.

DATED this 26th day of June, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge